UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-033 (PLF) |
| | : | |
| v. | : | |
| | : | |
| ROBERT LEE JACKSON | : | |
| | : | |
| Defendant | : | |
| | : | |
| _____ | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing the defendant, ROBERT LEE JACKSON, in the above-captioned case.

**I.  BACKGROUND**

The defendant was charged in a five-count Indictment with: Unlawful Possession Intent to Distribute Heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Unlawful Possession Intent to Distribute Heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii); Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of Title 18, United States Code, Section 924(c)(1); and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1).

1

On March 24, 2006, pursuant to a written plea agreement, the defendant, Mr. Jackson, pled guilty to Counts Three and Five of the Indictment, Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year.  At that time, he admitted to the following:

On October 29, 2005, at approximately 4:00 p.m., Officers Suter and Leslie, while on routine patrol, observed the defendant walking in the 1900 block of Gales, St., NE, in Washington, DC.  The officers were in a marked police car, wearing full uniform, and were patrolling the area due to numerous drug complaints and arrests.  As the officers drove further into the block, the defendant moved from the sidewalk and squeezed in between a light pole and a parked tow truck.  Officers saw the defendant pause there momentarily, make a dipping motion to his right side, and then proceed toward 19th St., NE.  Officer Leslie responded to the area where the defendant had paused and made the dipping motion.  There on the ground near the tow truck, Officer Leslie discovered 100 zips of heroin grouped in ten-pack bundles.  Officers arrested the defendant upon discovering the heroin.

Based on this arrest, officers obtained a warrant to search the defendant's residence at XXXX.  On November 13, 2005, officers executed the search warrant, and learned from family members that the defendant resided in the basement bedroom.  In the basement bedroom of XXXX, officers discovered 131 plastic bags of heroin and a .380 caliber handgun in a red toolbox located under a couch.  On the couch, officers found a box of .45 caliber ammunition.  Both the gun and the ammunition were manufactured outside the District of Columbia.  Inside the basement freezer, officers found two bags of crack cocaine.  Drug paraphernalia was

recovered from various locations in the basement bedroom. Mail matter addressed to the defendant, a picture of the defendant, and a prisoner property bag bearing the defendant's name were also recovered from the basement bedroom.

The combined weight of heroin possessed by the defendant on October 29, 2005 and November 13, 2005 was 22.5 grams. The combined weight of cocaine base recovered from the defendant's residence on November 13, 2005 was 49 grams. At the time the defendant possessed the handgun and ammunition in this case, he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in D.C. Superior Court Criminal Case No. F12948-89.

## II. SENTENCING CALCULATION

### A  Statutory Minimums and Maximums

Pursuant to 21 U.S.C. § 841(b)(1)(B)(iii), Count Three carries a minimum sentence of five years imprisonment and a maximum sentence of forty years, a fine $2,000,000, and four years of supervised release. Pursuant to 18 U.S.C. §§ 924(a)(2), 3571(b)(3), and 3583(b)(2), Count Five carries a maximum sentence of ten years imprisonment, a fine of $250,000, and three years of supervised release.

### B. Sentencing Guidelines Calculation

The Presentence Report (PSR) calculates the defendant's total offense level at 31. (PSR ¶ 26). This calculation contemplates a three level departure for acceptance of responsibility. The PSR calculates the defendant's criminal history at Category III. (PSR ¶ 36.) As a result, the PSR calculates the defendant's guideline range at 135 to 168 months. (PSR ¶ 60.)

## III. GOVERNMENT'S RECOMMENDATIONS

A. <u>Acceptance of Responsibility</u>

The government agrees that the defendant's base offense level should be decreased by three levels pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea early in the proceedings and admitted to relevant conduct for which he was accountable. In doing so, he permitted the government to avoid preparing for trial and to allocate its resources efficiently. Accordingly, the government is moving the Court to grant the additional one level decrease in base offense level provided for in that Guideline provision.

B. <u>Application of the Federal Guidelines post-Booker</u>

Pursuant to the plea agreement between the government and the defendant, it is the government's position that the Court should impose a sentence at the low end of the guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review

by courts of appeals for "reasonableness." Id. at 769.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to

provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of

6

Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

     Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating

written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range.

C.     Basis for Government's Sentencing Recommendation

A guideline sentence is necessary in view of the factors set forth in Title 18, United States Code, Section 3553(a). These factors are set forth and applied below.

First, the guideline sentence is necessary in view of the history and circumstances of the defendant. Defendant Jackson's criminal history spans almost thirty years, and includes seven convictions for theft and drug offenses. Notably, his criminal activity is escalating in seriousness, as his last two convictions were for drug dealing, and most recently he was possessing a gun and ammunition in addition to significant drug quantities.

Second, the guideline sentence is necessary in view of the need to reflect the seriousness of the offense. The defendant had a gun, 22.5 grams of heroin, and 49 grams of cocaine base, and he was packaging the drugs for sale on the street. He was just shy of possessing 50 grams of cocaine base–a quantity treated as justifying an additional two-point increase in base offense level under the guidelines. These quantities, because of the danger they pose and the damage they cause to the community, are significant despite the defendant's personal addiction. Indeed, far from a mitigating factor, the defendant's personal use enhances his culpability. As a user, the defendant was keenly aware of the devastation to users and their families that he would cause by selling these drugs.

Moreover, the guideline sentence is necessary to reflect the seriousness of the offense because the defendant has already received a substantial benefit from this plea, and all the

leniency he should receive is encompassed in the plea.  The defendant received a decrease in his offense level as a result of his acceptance of responsibility, which reduced his guideline sentence by 53 to 67 months (4.4 to 5.5 years).  The government also agreed to dismiss three counts at the time of sentencing, including a count that carried a second consecutive minimum sentence of five (5) years.  In addition, the government agreed to ask for the low end of the applicable guideline range.  Thus, because the sentence will already be reduced by 9.4 years, no additional leniency is appropriate in light of the seriousness of the offense.

      Third, the guideline sentence is justified by the need to promote respect for the law and to afford adequate deterrence to criminal conduct.  Prior to his arrest in this case, the defendant was twice convicted for dealing heroin.  In 1989, he was convicted of drug offenses including Possession with Intent to Distribute Heroin, and was sentenced to six years confinement.  Despite that sentence, he continued to sell heroin and was again convicted of Possession with Intent to Distribute Heroin in 2002.  Again, however, he continued to sell.  As this history shows, the defendant has simply not respected our drugs laws, nor shown any willingness to reform.  And in this regard we are referring, not to his continued substance abuse, but to his repeated dealing–the latter of which cannot be tolerated.

      Fourth, the defendant's recidivism is threat to the public because, despite criminal sanctions, he has shown himself unwilling to stop selling heroin in the community.  The pattern of the last fifteen years is that the public pays a price when the defendant is out of prison.  Therefore, the guideline sentence is justified by the need to protect the public.

      Fifth, the guideline sentence is justified by the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct. The defendant's personal addiction and physical condition–the impact of which we do not minimize–simply do not justify or excuse distributing heroin and crack in the community.

## IV.    CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to the low end of the guideline range, 135 months in prison.

Respectfully submitted,

KENNETH L. WAINSTEIN.
United States Attorney
Bar No. 451058

_____
BRIAN P. ROGERS
Special Assistant United States Attorney
Federal Major Crimes Section, Maryland Bar
555 4th Street, N.W., Room 4712
Washington, DC 20530
(202) 616-1478