UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 06-033 (PLF) |
| v. | : | |
| **ROBERT LEE JACKSON** | : | |
| **Defendant** | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant's memorandum in aid of sentencing in the above-captioned case.

### INTRODUCTION

In his Memorandum in Aid of Sentencing ("Defendant's Memorandum"), Defendant urges the Court to depart from the Sentencing Guidelines which recommend a sentence of 135 to 168 months imprisonment and instead to impose a sentence of five years. Defendant argues that a five year sentence is justified by the factors enumerated in 18 U.S.C. § 3553(a); that a downward departure is warranted by his physical condition under USSG § 5H1.4; and that the Court should reduce Defendant's guideline range from 135-168 months to 70 -87 months by rejecting the 100 to 1 crack-powder differential in the Sentencing Guidelines and substituting a 20 to 1 ratio in its place. As explained below, Defendant's arguments should be rejected and the Court should impose a sentence of 135 months.

**DISCUSSION**

I.    <u>The Non-Guideline Sentence Is Insufficient Under 18 U.S.C. § 3553(a).</u>

Defendant asserts that a five-year sentence is appropriate, maintaining that he "harbored no malice or ill-will in committing the offenses"; "that nobody was harmed during the commission of these offenses"; and that he "regrets" the impact that "drug use has on the community." (Defendant's Memorandum at 20.) None of these statements survive minimum scrutiny.

Although Defendant claims a subjective lack of malice, by his own admission he was an armed drug dealer and felon. By his own admission, he possessed a gun and ammunition in connection with an illegal and dangerous business. That he might not have shot anyone unless provoked does not mean he harbored no malice. In addition to wickedness of heart, the definitions of malice include the intent, without justification or excuse, to commit a wrongful act; reckless disregard of the law or of a person's legal rights; and ill will—all of these definitions are satisfied by Defendant's conduct.

Defendant's statement that "nobody was harmed during the commission of these offenses"– though perhaps technically accurate because police were able to prevent the sale of drugs in this case– is otherwise insignificant. In light of the quantity of drugs he possessed, it is doubtless that Defendant had been injecting drugs into the community for some time. It is therefore equally doubtless that people were harmed. We need look no further than Defendant's own life to see the harmful effects of drug use–addiction, crime, inability to maintain employment, prison, inability to support family, burdening of public resources. By selling crack and heroin, Defendant multiplied these ills in the community.

Defendant's statement that he "regrets" the impact that "drug use has on the community" likewise misses the mark. First, it misdirects the focus off of the greater evil and proper subject of inquiry, which is Defendant's drug-*dealing* and *its* impact on the community. Second, even if sincere, Defendant's regret cannot be regarded as meaningful in light of his history. One who is found in possession of 49 grams of crack, 22.5 grams of heroin, and a gun, and who persists in dealing drugs despite repeated criminal sanctions, cannot meaningfully say that he "regrets" the impact of drug use on the community.

Defendant's other statements in support of a five-year sentence are equally unavailing. Most are flatly refuted by his criminal history. For example, Defendant states that "[h]e has shown that he wants to help himself by getting drug treatment and breaking free of his addictions. Five years will be more than a sufficient amount of time for Mr. Jackson to get over his drug addiction . . . ." (Defendant's Memorandum at 21.) Previously, however, five years proved to be an insufficient amount of time. For although Defendant was convicted of Possession with Intent to Distribute Heroin and was sentenced to six years of confinement in 1989, he resumed using and dealing after release. He has also failed to take advantage of numerous drug programs.

Defendant asserts that he has demonstrated himself a "motivated individual" by completing his GED and maintaining employment "when his health permits." (Defendant's Memorandum at 20.) In Defendant's fifty-four years, however, he can cite only one instance of employment, which lasted less than a year. He has not maintained employment since 2002, and his only favorable reference is a person who cannot remember why his employment ended. Moreover, Defendant received his GED while incarcerated in 1978.

Although Defendant represents that he "[c]leary . . . has a good heart and strong character" (Defendant's Memorandum at 20), the undisputed facts show him to be an armed drug dealer, former thief, and life-long addict who is otherwise unemployable. Although Defendant says he "wishes he had been given more opportunities to succeed in life" (Defendant's Memorandum at 21), the undisputed facts are that he dropped out of high school because "he wanted to hang in the streets with his friends" (PSI Report ¶ 53); that he received years of drug treatment and spent at least 7 ½ months in different drug programs within the last seven years (PSI Report ¶ 51-52); and that he had support of family and a "loyal," "supportive and caring" woman. (Defendant's Memorandum at 20).

Ultimately Defendant's memorandum urges the Court to accept one argument. The argument, which is entirely invalid, proceeds as follows: The Court should be sympathetic to Defendant's battles with drug addiction; therefore, the Court should by sympathetic to Defendant's armed drug dealing. Among the reasons such position must be rejected is this: the decision to get a gun and to sell substantial quantities of heroin and crack is not the inescapable consequence of drug addiction. Rather, it is the product of a rational decision to be efficient, selfish, even lazy. Surely Defendant could have procured the $65 necessary to support his daily habit by means other than dealing in the community. But like all dealers, selling drugs was simply far easier, lucrative, and efficient for the Defendant. His decision to sell drugs, therefore, is no more tolerable than if it were motivated by desire for cars and clothes.

II.     Defendant's Physical Condition Does Not Justify a Downward Departure

Based on his physical condition, Defendant claims that his sentence should be reduced

from 70-87 months to 60 months. This position is unsupported. As an initial matter, all of Defendant's conditions are treatable in prison, where he must serve at least five years. The inquiry therefore must focus on his physical condition as it relates to time served in excess of five years. And in this regard, Defendant does not assert any relevant facts. Defendant represents only that, since he has been in the DC Jail, "attention to his medical needs has been inconsistent." (Defendant's Memorandum at 19.) This statement is irrelevant because Defendant will not be serving his sentence in the DC Jail. Furthermore there is no evidence that Defendant received "consistent" treatment before his incarceration. Indeed, it is difficult to believe that Defendant diligently took all of his prescribed medication as directed when he was using crack on a daily basis.

Defendant represents that "lack of attention and care *could* severely risk his health, and perhaps his life." (Defendant's Memorandum at 19.) Far from making out an extraordinary case, this statement is true of all people–both the seemingly healthy and those diagnosed with illnesses–for there is always some possibility of risk to health and life when health is neglected. The mere possibility of risk, however, does not justify a downward departure—especially where as here it is based on the speculative assumption that Defendant's health will be neglected.

Defendant's claim that his health would be better served by release from prison is belied by his own proffers. Defendant's memorandum notes that he was diagnosed with diabetes while detained at the DC Jail. (Id. at 19.) Far from justifying a departure, this example illustrates how Defendant's health will actually benefit from the medical attention that accompanies incarceration. Had he been on the street using drugs and without regular medical attention, this condition may well have gone undetected and untreated. For all these reasons, Defendant's

request for a downward departure and is unsupported and inappropriate.

III.     Departure Based on the Crack-Powder Sentencing Differential

Defendant argues that the Court should vary from the Sentencing Guidelines because of the differential in the sentencing ranges for offenses involving crack cocaine versus those involving powder cocaine. He justifies his argument on the basis that the Sentencing Commission has disavowed that disparity. Defendant's arguments should be dismissed. First, they ignore express Congressional intent regarding the appropriate level and relative severity of penalties for crack-cocaine offenses. Second, they lead to unwarranted disparities in sentences among defendants who deal in the same quantities of crack. Third, by effecting a sentence that is insufficient to comply with the purposes of 18 U.S.C. § 3553(a), they produce an unreasonable sentence in this particular case.

    **A.     It would be unreasonable to apply a crack cocaine sentencing scheme in conflict with Congressional intent.**

The federal drug statutes and corresponding sentencing Guidelines reflect a Congressional policy choice that trafficking in crack cocaine should be punished more severely than trafficking in powder cocaine. See United States v. Anderson, 82 F.3d 436, 437-38 (D.C. Cir. 1996). Even if the Sentencing Commission believes that the current crack sentencing policy is unjustified, Congress clearly does not agree. Congress has not adopted the Commission's proposals to reduce the disparities between sentences for crack and powder cocaine offenses, and it has rejected the idea that sentences for crack offenses should be the same as sentences for powder cocaine offenses. Id.

6

Reasonable people may disagree over the relative merits of the Commission's recommendations or Congress's choices, but it is beyond debate that the ultimate authority to decide the severity of cocaine sentences rests exclusively with Congress. See, e.g., United States v. Evans, 333 U.S. 483, 486 (1948) (power to set punishment for federal crimes belongs solely to Congress). Because the crack Guidelines mirror Congress's policy choices, it would be unreasonable for courts to impose a sentence below the advisory Guidelines sentence solely because courts prefer the Commission's recommendations to Congress's policy choices. While a district judge may disagree publicly with the laws he is sworn to uphold, Webb, 134 F.3d at 409, he is not free to substitute "[his] own sense of justice" for the Congressional policy choices that are reflected in the sentencing Guidelines. See United States v. Perkins, 108 F.3d 512, 515 (4th Cir. 1997). Although Booker gives sentencing courts greater leeway to disagree with the Guidelines in individual cases, it does not leave courts "free to disagree about the fundamental premises of sentencing, [or] to implement their own perceptions of what policies should drive punishment." United States v. Jaber, 362 F. Supp. 2d 365, 370 (D. Mass. 2005); see also id. at 381 (rejecting defendant's request for sentence of "time served"; "Congress and the Commission have expressed their deep concern that pseudoephedrine offenses be treated seriously. I am not free to reject that approach based on my personal predilection . . . .").

Adherence to that principle reflects proper deference to the critical difference between the roles played by the judicial and legislative branches in our Constitutional system.[1] Where a

---

[1] The Supreme Court underscored the importance of this distinction when it upheld the constitutionality of Congress's delegation of sentencing authority to the Sentencing Commission. See Mistretta v. United States, 488 U.S. 361, 364 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, United States v. Wiltberger, 18 U.S. (5

7

policy choice does not offend the Constitution – and the Court of Appeals has repeatedly upheld the crack/powder cocaine sentencing differential against constitutional challenges[2] – "[i]t is not for [the courts] to decide whether the 100:1 ratio is wise or equitable; that is a question for the popularly chosen branches of government." United States v. Lewis, 90 F.3d 302, 306 (8th Cir. 1996).  See also, e.g., United States v. Gaines, 122 F.3d 324, 330 (6th Cir. 1997) ("Reasonable minds can differ as to whether Congress or the Sentencing Commission chose the best policy, but as long as the 100:1 ratio does not violate the Constitution, it is for Congress to make the policy choices, not the Sentencing Commission or the courts"); United States v. Berger, 103 F.3d 67, 71 (9th Cir. 1996) (Court rejects "the notion that a district court may override the express intention of Congress regarding penalties for crack cocaine and powder cocaine. . . . It is not the province of this Court to second guess Congress's chosen penalty."); United States v. Fonts, 95 F.3d 372, 374 (5th Cir. 1996) ("[I]t is not the province of this Court to second guess Congress'[s] chosen penalty.  That is a discretionary legislative judgment for Congress and the Sentencing Commission to make."); United States v. Sanchez, 81 F.3d 9, 11 (1st Cir.  1996) ("[W]e cannot blind our eyes to the fact that the Congress shot down the Commission's recommendation [to equalize sentences for crack and powder cocaine offenses]"); United States v. Alton, 60 F.3d

---

Wheat) 76 . . . (1820), and the scope of judicial discretion with respect to a sentence is subject to congressional control.  Ex parte United States, 242 U.S. 27 . . . (1916).").

   [2]   See, e.g., United States v. Holton, 116 F.3d 1536, 1548-1549 (D.C. Cir. 1997) (equal protection); United States v. Edwards, 98 F.3d 1364 (D.C. Cir. 1996)(equal protection, Eighth Amendment); United States v. Walls, 70 F.3d 1323 (D.C. Cir. 1995) (Eighth Amendment); United States v. Johnson, 40 F.3d 436 (D.C. Cir. 1994) (equal protection); United States v. Thompson, 27 F.3d 671 (D.C. Cir. 1994) (equal protection, Eighth Amendment; also collecting cases); United States v. Cyrus, 890 F.2d 1245 (D.C. Cir. 1989) (equal protection, Eighth Amendment, due process (vagueness)).

1065, 1071 (3d Cir. 1995)("We defer to Congress and the Sentencing Commission to address the related policy issues [involving the disparate impact of crack cocaine penalties on African-Americans] and to consider the wisdom of retaining the present sentencing scheme").

      **B.    Applying non-Guidelines sentences to the entire category of crack cocaine offenses would cause unwarranted sentencing disparities.**

Ignoring the sentencing scheme for crack cocaine would also directly contradict 18 U.S.C. § 3553 and Booker, which both "require[] judges to consider the . . . the need to avoid unwarranted sentencing disparities . . ." If a court were to ignore the Guidelines sentence and substitute one derived from any of the Commission's alternate crack sentencing formulas, then the defendant's sentence would be unfairly disproportionate to the sentences of all the other defendants who committed the same act, but who drew a sentencing judge who honored the Sentencing Guidelines, or a judge who also disagreed with the Guidelines' current 100:1 ratio, but chose a different remedy. Two defendants being sentenced in neighboring courtrooms in the same courthouse would receive different sentences based on their judges' personal opinions of the dangers of crack cocaine. Permitting reduced sentencing based on the crack/powder disparity, "would allow every sentencing district judge to select his or her personal crack-cocaine ratio. . . . It is hard to imagine a more flagrant violation of the Guidelines' purpose to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." In re: Sealed Case, 292 F.3d 913, 915-916 (D.C. Cir. 2002)(internal quotation marks and citations omitted). It is this very situation that created the need for the Sentencing Guidelines in the first place.

Ignoring the crack cocaine guidelines would also create an unwarranted disparity between those defendants who are sentenced under the Guidelines and those whose sentences are driven by the statutory mandatory minimums.[3]  See Anderson, 82 F.3d at 440-441.  Although Defendant urges the Court to follow the recommendations of the Commission, "it is significant that the Commission's reform proposal[s] included an explicit invitation to Congress to change the mandatory minimums themselves," thus signifying that the Commission would not endorse sentencing practices that were out of sync with Congressional directives.  Id. at 441.  "So far as appears, [the Commission] has not altered its original view that 'a logical sentencing [structure] for drug offenses' requires refinements coordinated with the mandatory minimums."  Id. (internal citation omitted).  The failure to ensure coordination with the statutory penalties was one of the reasons that Congress disapproved the Commission's unilateral action to equalize crack and powder cocaine penalties in 1995.

Relying on a decision from a Wisconsin district court, United States v. Smith, 2005 WL 549057 (E.D. Wisc. March 3, 2005), Defendant suggests that the Court should apply the Commission's crack sentencing proposals in order to reduce an unwarranted disparity between

---

[3]  For example, a first-time offender convicted of distributing 50 or more grams of crack cocaine who did not qualify for the safety valve would be subject to the statutory mandatory minimum and sentenced to at least 10 years (120 months) in prison.  Because the current Guidelines were designed to reflect the statutory mandatory minimum sentences and build proportional sentences around those minimums, another first-time offender who sold 49.9 grams of crack cocaine under the current Guidelines would face a sentence in the range of 97 to 121 months.  U.S.S.G. § 2D1.1(c)(5) (2004).  If the Court applied the Commission's 2002 proposal, the second offender would face a dramatically lower sentence, in the range of 63-78 months.  See 2002 USSC Report, Appendix at A-6, & U.S.S.G. Manual, Sentencing Table (2004).  One-tenth of a gram's difference would essentially cut the sentence in half.  The effect of the Commission's 1995 equalization proposal would be even more dramatic, and unsupportable.  There is nothing reasonable about such disparities.

sentences for crack and powder cocaine offenses.  That is the wrong comparison.[4]  The D.C. Circuit has held in similar circumstances that crack offenses are different from other drug offenses, including powder cocaine offenses, and thus, for sentencing purposes, the relevant comparison is between crack offenses.  See Anderson, 82 F.3d at 447 n.3.  In Anderson, the appellants asserted that the recommendations of the 1995 Commission report (to equalize crack and powder cocaine penalties) was a circumstance unique to crack offenses and, because it was not common to all drug offenses, it was an "atypicality" that justified a departure from the Guidelines sentence for crack.  Id. at 446 n.3.  The dissenting judge in Anderson, who would have upheld a departure for other reasons, concluded that the appellants were making the wrong comparison:

> Since each type of controlled substance listed in the guidelines presents fairly unique risks of harm to the user and the surrounding community, the relevant group of similar offenses for determining the typicality of a circumstance is possession or sale of the same controlled substance which the defendant possessed or sold, not possession or sale of all controlled substances.  Id.

For the same reasons, wholesale adjustments to crack penalties in order to treat crack offenders the same as powder cocaine offenders would ignore Congress's intent that defendants who commit similar acts be sentenced similarly, and that crack offenders be punished more severely than powder cocaine offenders.

To avoid such unreasonably disproportionate sentences,  sentencing courts should adhere

---

[4]     The Smith court also concluded that it would follow the 2002 Commission recommendations in order to provide a "sentence no greater than necessary."  See 18 U.S.C. § 3553(a).  Again, this reasoning flies in the face of Congress's determination that the current penalties for crack offenses are necessary.

to the recommended Guidelines' sentence for crack offenses.

      **C.**      **Rejecting the 100 to 1 ratio produces an unreasonable sentence in this case by effecting a sentence that is insufficient to comply with the purposes of 18 U.S.C. § 3553(a).**

Defendant urges the Court to substitute a 20 to 1 ratio into the guideline calculation and thereby reduce Defendant's guideline sentence to 70-87 months. This argument should be rejected, however, because the resulting sentence cannot comply with the Congressional directive contained in 18 U.S.C. § 3553(a). Section 3553(a), of course, directs the Court to impose a sentence that is sufficient to comply with the purposes contained in section 3553(a)(2), which include the need to promote respect for the law and to protect the public from further crimes. The government submits that a sentence of 70 months cannot accomplish these purposes.

Defendant has shown that a sentence of six years will not deter him from dealing dangerous drugs. In 1989 he was convicted of Possession with Intent to Distribute Heroin and Attempted Possession with Intent to Distribute Cocaine, and was sentenced to six years confinement. Notwithstanding that sentence, and yet another drug conviction in 2002, Defendant continued to sell heroin and cocaine. Because a similar sentence so completely failed to promote respect for the law or to protect the public from further crimes in the past, there is no reason to believe that a seventy-month sentence will accomplish those purposes now. Therefore, substituting a 20 to 1 ratio will result in an unreasonable sentence.

## CONCLUSION

For the reasons set forth above, and in the Government's Memorandum in Aid of

Sentencing, the government respectfully submits that Defendant's arguments for downward departure should be rejected and Defendant should be sentenced to 135 months in prison.

Respectfully submitted,

KENNETH L. WAINSTEIN.
United States Attorney
Bar No. 451058

---

BRIAN P. ROGERS
Special Assistant United States Attorney
Federal Major Crimes Section, Maryland Bar
555 4th Street, N.W., Room 4712
Washington, DC 20530
(202) 616-1478